T.C. Memo. 2007-209

UNITED STATES TAX COURT

RAYMOND E. VOGT, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3037-06.                    Filed August 1, 2007.

Raymond E. Vogt, Jr., pro se.

John W. Strate, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  Respondent determined deficiencies,
penalties, and additions to tax with respect to petitioner's
Federal income tax as follows:[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended.  All Rule references are
to the Tax Court Rules of Practice and Procedure, unless
(continued...)

| | | Additions to Tax/Penalties | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. [1]6663 | Sec. 6654 | Sec. [2]6651(f) |
| 2000 | $13,513 | $3,479 | $5,076 | -- | -- |
| 2001 | 22,722 | 4,876 | 15,317 | -- | -- |
| 2002 | 5,644 | 1,564 | 3,980 | -- | -- |
| 2003 | 23,585 | -- | -- | $617 | $17,688 |

[1]In the alternative to fraud penalties under sec. 6663, respondent determined accuracy-related penalties under sec. 6662 of $1,354, $4,085, and $1,061 for the years 2000, 2001, and 2002, respectively.

[2]In the alternative to a sec. 6651(f) addition to tax for the year 2003, respondent determined an addition to tax under sec. 6651(a)(1) in the amount of $5,307.

After concessions,[2] the issues for decision are: (1) Whether petitioner received unreported income for 2000, 2001, 2002, and 2003 (years at issue); (2) whether petitioner is entitled to certain itemized deductions for the years at issue; (3) whether petitioner is entitled to a claimed Schedule E, Supplemental Income and Loss, rental expense deduction for 2001; (4) whether petitioner is liable for self-employment tax under section 1401 for 2001, 2002, and 2003; (5) whether petitioner is liable for fraud penalties under section 6663 for 2000, 2001, and 2002, or alternatively, accuracy-related penalties under section

---

[1](...continued) otherwise indicated. Amounts are rounded to the nearest dollar.

[2]In his amendment to answer, respondent conceded income adjustments related to certain partnership distributions. On brief, respondent conceded income adjustments related to Peninsula Communications of $13,376 and $48,001 for tax years 2000 and 2001, respectively. In addition, respondent conceded adjustments based on bank deposits into California Federal Bank of $18,527 for tax year 2002.

6662; (6) whether petitioner is liable for the fraudulent failure to file addition to tax under section 6651(f) for 2003, or alternatively an addition to tax under section 6651(a)(1); (7) whether petitioner is liable for additions to tax under section 6651(a)(1) for 2000, 2001, and 2002; and (8) whether petitioner is liable for an addition tax under section 6654(a) for 2003.

FINDINGS OF FACT

Petitioner resided in Vacaville, California, at the time he filed the petition. In his answer, respondent alleged the facts on which he relied to support his determination of the deficiencies, penalties, and additions to tax for the years at issue. Petitioner did not file a reply to respondent's answer. On July 19, 2006, respondent filed a motion under Rule 37(c) for an order that undenied allegations in the answer be deemed admitted. In petitioner's response to the motion, he refused to respond to the affirmative allegations based on his assertion of the Fifth Amendment privilege against self-incrimination.[3] The Court found this argument meritless. Petitioner did not respond to the substance of the affirmative allegations. On September 1, 2006, the Court granted respondent's motion and deemed admitted the undenied affirmative allegations of fact contained in

---

[3]Petitioner attempted to use a generalized fear of self-incrimination to avoid responding to respondent's affirmative allegations. "A taxpayer cannot base his failure either to cooperate with the IRS or to produce records on a generalized fear of self-incrimination." Edelson v. Commissioner, 829 F.2d 828, 832 (9th Cir. 1987), affg. T.C. Memo. 1986-223.

paragraphs 6, 7, 8, and 9 of respondent's answer.  Rule 37(c);
see <u>Doncaster v. Commissioner</u>, 77 T.C. 334, 336 (1981); <u>Gilday v.
Commissioner</u>, 62 T.C. 260, 261 (1974).  The deemed admissions
procured by respondent under Rule 37(c) are conclusively
established.  Petitioner did not move to withdraw the deemed
admissions at any time during the proceeding, nor did he present
any evidence that would tend to refute the admissions.  Except
where we indicate otherwise, we adopt those admissions as our own
findings and incorporate them herein by this reference.

Petitioner was uncooperative with respondent in respondent's
attempts to create a stipulation of facts.[4]  On November 3, 2006,
the Court deemed stipulated respondent's proposed stipulation of
facts for purposes of this case pursuant to Rule 91(f)(3).  The
stipulation of facts and the attached exhibits are incorporated
herein by this reference.

On November 13, 2006, respondent filed an amendment to his
answer, which alleged that petitioner received additional
unreported income based on respondent's bank deposits analysis

_____

[4]On Sept. 29, 2006, respondent filed a motion to show cause
why respondent's proposed stipulation of facts should not be
accepted as established under Rule 91(f).  The Court granted the
motion to show cause, ordering petitioner to file a response on
or before Oct. 23, 2006.  Petitioner filed both a response and a
supplemental response to the order to show cause.  In his
responses, petitioner objected to nearly all of the stipulations
and proposed exhibits, asserting the Fifth Amendment privilege
against self-incrimination.  The Court again found this argument
meritless.  Petitioner did not respond to the substance of the
proposed stipulations or exhibits.

for 2001 and 2002, and therefore was liable for increased deficiencies, increased penalties under section 6663, and increased additions to tax under section 6651(a)(1).[5]  On November 15, 2006, trial was held in San Francisco, California.

During the years at issue, petitioner was an employee of Linotext America, Inc., and self-employed as a printing salesman doing business as Ray Vogt Enterprises and Springboard Ltd. Trust.  Petitioner created Springboard Ltd. Trust during 2002 to operate his printing business and to pay certain personal expenses.

On February 1, 1999, and January 1, 2003, petitioner filed Forms W-4, Employee's Withholding Allowance Certificate, falsely stating, under penalty of perjury, he was exempt from withholding taxes.  On January 20, 2004, respondent advised petitioner that respondent had received information that he might be involved with American Rights Litigators (ARL), an abusive tax avoidance scheme.  On February 4, 2004, petitioner mailed respondent a letter in which he falsely denied involvement with ARL.  On May 11, 2004, respondent served a summons on petitioner requesting that he appear on June 2, 2004, to answer certain questions and provide records regarding his income taxes.  Petitioner did not comply with the summons.  On November 30, 2004, the U.S. District Court, Northern District of California ordered petitioner to

---

[5]On brief, respondent conceded the additional unreported income for 2002.

appear before respondent's revenue agent on December 7, 2004. On December 7, 2004, petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2000, on which he reported adjusted gross income of $99,795 and tax due of $12,724. Petitioner also filed his 2001 return on December 7, 2004, on which he reported adjusted gross income of $53,582 and tax due of $1,279. Petitioner filed his 2002 return on February 11, 2005, on which he reported adjusted gross income of $63,564 and tax due of $3,319.

Petitioner was not only uncooperative with respondent during the examination of the years at issue, but he actively attempted to prevent respondent from reconstructing his income using the bank deposits method. On March 2, 2005, petitioner sent a letter to Eureka Bank advising the bank not to comply with a summons issued by respondent seeking petitioner's financial records. Petitioner falsely told respondent's revenue agent that his only bank account was with Bank of America. In a letter sent to respondent on April 15, 2005, petitioner falsely stated that he was not the owner of any partnership interests or rental property during the years at issue. Furthermore, petitioner did not maintain any books or records with respect to his income and deductions for the years at issue.

For the year 2000, respondent determined that petitioner received but did not report a taxable distribution from the

Section 28 Limited Partnership in the amount of $214.  Respondent also disallowed $28,048 of petitioner's itemized deductions.[6]

For the year 2001, respondent determined that petitioner received but did not report a partnership distribution from the Section 28 Limited Partnership in the amount of $683. Respondent's bank deposits analysis showed that petitioner received $19,233 of additional unreported income.[7]  Respondent also disallowed $14,963 of petitioner's itemized deductions and a Schedule E rental expense deduction of $810.[8]

For the year 2002, respondent determined that petitioner failed to report the following specific items of income:  (1) A partnership distribution of $951 from the Section 28 Limited Partnership; (2) Social Security benefits of $1,571; and (3) a gross dividend from Cetus Healthcare Limited Partnership II of $124.  Respondent determined that petitioner had additional income based on bank deposits of 11,491,[9] and increased

_____

[6]Respondent denied or reduced petitioner's claimed home mortgage interest deduction under sec. 163, charitable contribution deduction under sec. 170, deduction for taxes paid under sec. 164, and deductions for unreimbursed employee expenses for vehicle, travel, and other employee business expenses.

[7]During the year 2001, petitioner made net deposits of $75,496 into his bank accounts, while he reported only $56,262 of income on his return.

[8]The disallowed deductions included deductions for State and local taxes, interest expense, charitable contributions, and employee business expenses.

[9]The deposits were of cash and a certified check drawn on
(continued...)

petitioner's capital gain by $1,928. Respondent also disallowed certain itemized deductions totaling $604.[10]

Petitioner did not file a return for 2003. He did not make estimated tax payments for 2003. Respondent determined that during 2003 petitioner received the following specific items of income totaling $47,092: (1) A partnership distribution from Cetus Healthcare Limited Partnership II of $242; (2) a distribution from a Schwab Individual Retirement Account of $3,092; (3) wages from Linotext America, Inc. of $19,970; (4) Social Security benefits of $19,248; (5) nonemployee compensation from Linotext America, Inc., and Applied Materials of $1,722 and $1,933, respectively; and (6) capital gain from the sale of Cisco stock of $885. Respondent's bank deposits analysis showed that petitioner received $54,832 of additional unreported income.

OPINION

A.  Unreported Income

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, the U.S. Court of Appeals for the Ninth Circuit, the court to which appeal in this case would lie, has held that the Commissioner must establish

[9](...continued)
Master Printers Credit Union.

[10]The disallowed deductions included charitable contributions and miscellaneous employee business expenses.

"some evidentiary foundation" connecting the taxpayer with the income-producing activity, or otherwise demonstrate that the taxpayer received unreported income, for the presumption of correctness to attach to the deficiency determination in unreported income cases. Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), revg. 67 T.C. 672 (1977). If the Commissioner introduces such evidence demonstrating that the taxpayer received unreported income, the burden shifts to the taxpayer to show by a preponderance of the evidence that the deficiency was arbitrary or erroneous. See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97.

### 2000

It was deemed admitted under Rule 37(c) that petitioner received but did not report a taxable partnership distribution for the year 2000. Petitioner did not move to have the deemed admissions withdrawn with respect to any of the years at issue, nor did he present any evidence that would tend to refute those admissions. We therefore hold that petitioner received unreported income in the above amount.

### 2001

It was deemed admitted under Rule 37(c) that petitioner received a taxable partnership distribution for the year 2001. Respondent's bank deposits analysis for 2001 showed petitioner

also had unreported income of $19,233.[11]  The bank deposits

analysis was properly conducted, and represents prima facie

evidence of income.  See Tokarski v. Commissioner, 87 T.C. 74, 77

(1986) (citing Estate of Mason v. Commissioner, 64 T.C. 651, 656-

657 (1975) affd. 566 F.2d 2 (6th Cir. 1977)).  Respondent

provided petitioner with ample opportunity to present evidence

disputing this income.  Petitioner presented no evidence, nor did

he make any credible statements, disputing his receipt of this

income.  Furthermore, petitioner testified that he received no

loans, bequests, inheritances, gifts, or other nontaxable amounts

during 2001.  We therefore hold that petitioner received

unreported income in the above amounts.

    2002

    It was deemed admitted under Rule 37(c) that petitioner

understated taxable income by $14,142 and underpaid income tax by

$5,307 for 2002.[12]  We therefore hold that petitioner received

unreported income in the above amount.

    2003

    Petitioner failed to file a Federal income tax return for

---

[11]The unreported income shown by respondent's bank deposits
analysis was not deemed admitted under Rule 37(c), nor was it
deemed stipulated under Rule 91(f).  This amount, alleged in the
amended answer, increased petitioner's deficiency from $22,722 to
$28,036; therefore, respondent bears the burden of proof with
respect to this amount.  Rule 142(a).

[12]The amount by which petitioner underpaid his income tax
takes into account disallowed deductions.

2003.  It was deemed admitted under Rule 37(c) that petitioner received income in the amount of $95,382, incurring an income tax liability of $23,585 for 2003.[13]  We therefore hold that petitioner received unreported income in the above amount.

B.    Disallowed Deductions

In addition to the receipt of unreported income, respondent determined that petitioner overstated deductions.  Section 161 provides for itemized deductions in computing taxable income.  However, deductions are a matter of legislative grace, and a taxpayer bears the burden of proving that he has complied with the specific requirements for any deduction he claims.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The taxpayer has the burden of substantiating any deduction.  Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); see also Rule 142(a).

Respondent denied or reduced petitioner's claimed deductions for the years 2000, 2001 and 2002, including a Schedule E expense for 2001.  Petitioner presented no evidence to substantiate any of these deductions.  Furthermore, at trial petitioner refused to answer questions about his deductions for the years at issue, asserting meritless arguments.  Therefore, petitioner has failed to meet his burden with respect to the disallowed deductions.

---

[13]Respondent allowed petitioner certain itemized deductions totaling $13,142.

C.   Liability for Self-Employment Taxes for 2001, 2002, and 2003

Respondent determined that petitioner is liable for self-employment tax under section 1401 for the years 2001, 2002, and 2003.  Section 1401 imposes a tax on the self-employment income of individuals.  Self-employment income means the net earnings from self-employment derived by an individual.  Sec. 1402(b).  Petitioner bears the burden of proving respondent's determination incorrect.  See Rule 142(a); Welch v. Helvering, 290 U.S. at 115.  It was deemed admitted under Rule 37(c) that petitioner was self-employed as a printing salesman doing business as Ray Vogt Enterprises and Springboard Trust.  Therefore, we hold that, with respect to his income from that business, petitioner is liable for self-employment tax under section 1401 for the years 2001, 2002, and 2003.

D.   Fraud Penalties and Additions to Tax Under Sections 6663 and 6651(f)

Section 6663 imposes a 75-percent penalty on the portion of any underpayment due to fraud.  Section 6651(f) imposes an addition to tax of up to 75 percent of the amount of tax required to be shown on the return where the failure to file a Federal income tax return is due to fraud.  Because these sections are construed similarly as to a determination of fraudulent intent, we consolidate our discussion of respondent's fraud determinations.  See Clayton v. Commissioner, 102 T.C. 632, 653 (1994).

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. <u>Powell v. Granquist</u>, 252 F.2d 56 (9th Cir. 1958); <u>Miller v. Commissioner</u>, 94 T.C. 316, 332 (1990). Fraud is a question of fact that must be considered based on an examination of the entire record and petitioner's entire course of conduct. <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 699 (1989). Fraud is never presumed and must be established by independent evidence of fraudulent intent. <u>Id.</u> The Commissioner bears the burden of demonstrating fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To carry the burden of proof on the issue of fraud, the Commissioner must show, for each year at issue, that (1) an underpayment of tax exists and (2) some portion of the underpayment is due to fraud. <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 699. Respondent's burden of proving fraud can be met by facts deemed admitted pursuant to Rule 37(c). <u>Doncaster v. Commissioner</u>, 77 T.C. at 337 (1981); see <u>Marshall v. Commissioner</u>, 85 T.C. 267, 272-273 (1985). Fraud may also be proven by circumstantial evidence, and reasonable inferences may be drawn from the facts because direct evidence is rarely available. <u>Delvecchio v. Commissioner</u>, T.C. Memo. 2001-130, affd. 37 Fed. Appx. 979 (11th Cir. 2002).

Circumstantial evidence that may give rise to a finding of fraud includes:  (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) providing implausible or inconsistent explanations of behavior; (5)

concealment of assets; (6) failure to cooperate with taxing authorities; (7) filing false Forms W-4; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in a pattern of behavior that indicates an intent to mislead; and (11) filing false documents.  See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Cooley v. Commissioner, T.C. Memo. 2004-49.  Although no single factor is necessarily sufficient to establish fraud, a combination of several of these factors may be persuasive evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603.

2000

Respondent determined that petitioner is liable for a fraud penalty under section 6663 for 2000.  It was deemed admitted under Rule 37(c) that petitioner fraudulently, knowingly, intentionally, and willfully understated his income in the amount of $14,050.  However, after concessions, respondent asserts that petitioner understated his year 2000 income by failing to report a partnership distribution of $214.  In comparison, petitioner listed on his return, filed approximately 43 months late, $99,795 of adjusted gross income.  Petitioner's entire course of action demonstrates many of the badges of fraud listed above, notably failure to file returns promptly, keeping inadequate records, filing false W-4 Forms, and failing to cooperate with taxing authorities.  However, petitioner's failure to include the

partnership distribution on his return was not due to these badges of fraud. During 2000, petitioner also overstated itemized deductions, but respondent does not contend, nor would we find based on the record, such overstatement was due to fraud.[14] Therefore, petitioner is not liable for a penalty under section 6663 for the year 2000.

2001

Respondent determined that petitioner is liable for a fraud penalty under section 6663 for the year 2001. It was deemed admitted under Rule 37(c) that petitioner fraudulently, knowingly, intentionally, and willfully received $49,101 of unreported taxable income for the year 2001. However, $48,419 of that amount was conceded by respondent. In addition to the remaining $683 taxable partnership distribution, respondent alleged in his amended answer that petitioner received, but fraudulently did not report, $19,233 of taxable income. Fraud was not deemed admitted with respect to this amount. We now must decide whether respondent has met his burden.

Petitioner's conduct exhibits many of the badges of fraud listed above. He understated his income. He not only kept inadequate records; he kept no records. He filed his tax return for the year 2001 approximately 31 months late. He concealed

---

[14]Respondent does not seek fraud penalties under sec. 6663 for the portion of the underpayments attributable to petitioner's unsubstantiated deductions for any of the years at issue.

income using the name Ray Vogt Enterprises.  He failed to cooperate with taxing authorities, including in the conduct of this proceeding.  He gave false information to taxing authorities stating that he owned no partnership interests or rental property during the years at issue.  He refused to provide answers, or gave evasive and irrelevant answers citing frivolous arguments on numerous occasions.  He attempted to prevent a financial institution from complying with a notice of summons sent to it.  He filed two false Forms W-4, stating that he was exempt from withholding taxes.  Lastly, he had significant cash deposits for the years at issue.  For these reasons, we hold that petitioner is liable for a penalty under section 6663 with respect to the portion of the underpayment attributable to unreported income of $19,916 for the year 2001.

### 2002

Respondent determined that petitioner is liable for a fraud penalty under section 6663 for 2002.  It was deemed admitted under Rule 37(c) that petitioner fraudulently, intentionally, knowingly, and willfully understated his taxable income by $14,142 for the year 2002.[15]  In addition to the badges of fraud listed for the year 2001, which are equally applicable to the year 2002, petitioner used the name Springboard Ltd. Trust to

---

[15]Respondent alleged in his amended answer that petitioner received additional amounts of unreported income, but he conceded those amounts on brief.

conceal income during 2002, and he filed his 2002 return approximately 22 months late.  For these reasons, we hold that petitioner is liable for a penalty under section 6663 with respect to the portion of the underpayment attributable to unreported income of $14,141 for the year 2002.

2003

Respondent determined that petitioner is liable for a fraudulent failure to file addition to tax for the year 2003.  We consider the same factors under section 6651(f) that are considered in imposing the fraud penalty under section 6663. Clayton v. Commissioner, 102 T.C. at 653.  In addition to the factors indicating fraud for the years 2001 and 2002 listed above, we note that respondent began examination of petitioner's tax liabilities as early as January 2004, before a return for the year 2003 was due.  Still, petitioner failed to file a return for the year 2003.  It was deemed admitted that petitioner Raymond E. Vogt fraudulently, intentionally, knowingly, and willfully underpaid income tax for 2003 in the amount of $23,585.  It was further admitted that petitioner's failure to file a Federal income tax return for the year 2003 was fraudulent with intent to evade tax.  For these reasons, we hold that petitioner is liable for a fraudulent failure to file penalty under section 6651(f) for 2003.

E.   Penalty Under Section 6662 and Additions to Tax Under
     Sections 6651(a)(1) and 6654

   1.   Burden of Proof

The Commissioner bears the initial burden of production with respect to petitioner's liability for additions to tax under sections 6651(a)(1) and 6654(a) and penalties under section 6662(a).  Sec. 7491(c); Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To meet this burden, respondent must come forward with sufficient evidence indicating it is appropriate to impose the additions to tax and penalties.  Higbee v. Commissioner, supra at 446-447.  Respondent's burden may be met by facts deemed admitted pursuant to Rule 37(c).  Doncaster v. Commissioner, 77 T.C. at 337; see Marshall v. Commissioner, 85 T.C. at 272-273.  The taxpayer bears the burden of proof as to any exception to the additions to tax or penalties.  See sec. 7491(c); Rule 142(a); Higbee v. Commissioner, supra at 446-447.

   2.   Section 6662(a) Penalty for 2000

Having found that petitioner is not liable for a fraud penalty for the year 2000, we consider respondent's argument in the alternative that petitioner is liable for an accuracy-related penalty under section 6662.  Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to, inter alia, negligence or disregard of rules or regulations.

It was deemed admitted under Rule 37(c) that petitioner was negligent and reckless in the preparation of his Form 1040, for

the year 2000.  It was further admitted that petitioner did not have reasonable cause for the underpayment of his Federal income tax liability.  We therefore hold that petitioner is liable for an accuracy-related penalty under section 6662(a) for the year 2000 with respect to the portion of the underpayment attributable to unreported income of $214.[16]

3.    Section 6651(a)(1) Additions to Tax for 2000, 2001, and 2002

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing) unless the taxpayer can establish that such failure is because of reasonable cause and not because of willful neglect.

Petitioner's Forms 1040, U.S. Individual Income Tax Return, for 2000, 2001, and 2002 were due to be filed on or before April 15, 2001, 2002, and 2003, respectively.  Petitioner's 2000 and 2001 returns were filed on December 7, 2004, approximately 43 and 31 months late, respectively.  Petitioner's 2002 return was filed on February 11, 2005, approximately 22 months late.  No extensions were sought from, nor granted, by respondent.  It was deemed admitted under Rule 37(c) that petitioner's failure to file his Forms 1040 was due to willful neglect.  Furthermore, petitioner did not have reasonable cause for his failure to file

---

[16]Respondent does not seek an accuracy-related penalty under sec. 6662 for the portion of the underpayment attributable to petitioner's unsubstantiated deductions.

his returns timely.  We therefore hold that petitioner is liable for additions to tax under section 6651(a)(1) for 2000, 2001, and 2002.

4.   Section 6654 Addition to Tax for 2003

Section 6654(a) imposes an addition to tax on an underpayment of estimated tax unless one of the statutory exceptions applies.  See sec. 6654(e).  The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability.  Sec. 6654(c)(1); Wheeler v. Commissioner, 127 T.C. 200, 210 (2006).  Each required installment of estimated tax is equal to 25 percent of the "required annual payment."  Sec. 6654(d)(1)(A).  The required annual payment is generally equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.  Sec. 6654(d)(1)(B); Wheeler v. Commissioner, supra at 210-211.  A taxpayer has an obligation to pay estimated taxes for a particular year only if he has a "required annual payment" for that year.  Wheeler v. Commissioner, supra at 211.  The required annual payment is determined with respect to the tax liability shown on the taxpayer's return for the preceding year even when the return for the previous year fraudulently understates income,

or was filed late.  <u>Mendes v. Commissioner</u>, 121 T.C. 308, 324 (2003).

It was deemed admitted under Rule 37(c) that petitioner failed to file a Federal income tax return for 2003.  It was further admitted that petitioner failed to make required estimated Federal income tax payments for 2003.  Petitioner did not qualify for an exception to application of section 6654.  We therefore hold that petitioner is liable for an addition to tax under section 6654 for 2003 determined with respect to the tax shown on his 2002 return, $3,319.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.